Good morning. Good morning, your honors. I'm Allison Mendel for the defendant, Charles Lee. This case has two primary issues, the effect of prosecutorial misconduct and ineffective assistance of counsel. Since the prosecutor, the government in their brief admit the prosecutorial misconduct except with respect to one fact, which I want to briefly discuss, and that is the cross-examination of Mr. Lee about the testimony of Officer Peck about the driving. I think if you look at that in the context of the other, this circuit's other prosecutorial misconduct cases and the kinds of questions that were asked, I think that this clearly is another instance of asking the witness to say that the government witness is lying. Since the prosecutor retells, says, did you hear what the prosecutor said, I mean, what the officer said, and was that right, no, tell us what's wrong with it. Just because they don't use the word lie doesn't mean they weren't asking him if the officer was lying. So I think that that is clearly another incident of the same kind of misconduct to which the government admits on the other issues. Well, I understand what you're saying, and it's inartful, but it's a little different, too. It's not saying you've got to call him a liar. It's a way to get to the point. Okay, you heard what he said. Do you agree with that, or do you have a different version? And what they ultimately elicited was a different version. As I went through the transcript, I didn't see an effort, for example, to go back to say, to make a comparison all the time with what the officer said. That's true, but this court in the previous cases has called that line of questioning asking to impugn the officer's veracity. So I think it amounts to the same thing. I agree it's somewhat different in context, but it amounts to saying, here's the officer's testimony. What's wrong with it? Really what you get down to, what this court is faced with then, is deciding whether the misconduct was prejudicial, sufficiently prejudicial to Mr. Lee. And I think that in the context of this case, that it clearly was. Counsel, the government concedes that the statements were inappropriate, both in the closing argument and in the cross-examination. Which of the two is the stronger, from your point of view? I think that the cross-examination was far more impactful, because most of the evidence against Mr. Lee was the statements of Mr. Esau. So the conversation about, is he lying, why is he lying, he's lying again, why is he lying? That really was the crux of what the jury had to decide, was whether they believed Mr. Esau or Mr. Lee. I think that the combination of the two was bad, made it worse. And in addition, I think that the second issue about the ineffective assistance of counsel, I think it's clear that the evidence that was admitted without objection was extremely prejudicial. And the fact that that evidence was there made Mr. Lee's situation worse. Had that evidence not been admitted and relied on and argued by the prosecutor, there would have been even less evidence to convict Mr. Lee. This is just there, if you're looking at the scales of justice, on both sides in this case there are simply feathers. So every grain of sand you add to one side or the other of the scales, it makes a big difference, because there isn't much there. The direct evidence against Mr. Lee was extremely thin. The government says in its brief a number of times that there was other evidence against Mr. Lee, or that it was obvious that the things Mr. Esau was saying were true and Mr. Lee wasn't true. You know, really that's not true, because Mr. Esau's testimony was so carefully equivocal. And in fact, the government's questioning of Mr. Esau was carefully equivocal, because it appears to me, anyway, from reading the transcript, that there are incriminating things that Mr. Esau was not prepared to say. So those questions weren't asked. For example, did Mr. Lee, in fact, overhear you talking on the phone about drug deals? That question was never asked, so it wasn't answered. His testimony was just so deliberately vague that there wasn't a whole lot there, and the government had to make the most of what it had. But wasn't there testimony by a police officer that people were entering and exiting Lee's vehicle? Absolutely, and Mr. Lee doesn't deny it and has an explanation for each of those incidences. And in fact, you know, one of them was where he said, well, we bought marijuana from that one guy, and then we went and got some cigarillos to put the marijuana into. I mean, you know, these are not particularly flattering explanations, but they had nothing to do with dealing with cocaine. So, and you don't have to really, it's not an either-or situation, but if we focus on the requirement or the inappropriate questioning that required your client to characterize Esau as a liar, it was inappropriate, but I'm still not sure I understand the prejudice, given that the basic defense is that Esau is a liar. Esau is not being held up as a paragon of virtue. It's not like he's a police officer or something. He's there as somebody who's got a dismerged record already. How is it exactly a real problem for your client to call him a liar? Well, you know, I think that goes to the whole fundamental question of why is that prosecutorial misconduct to ask any witness whether another witness is a liar, and this court has clearly held that that's per se not permissible because it asks the witness to perform the function of the jury. But that doesn't tell me that it prejudices your client, and I can infer it more easily if your client's being forced to call somebody that might otherwise be accepted by the jury as someone who's truthful. If you're forced to call him a liar, it paints you into a corner. But here you've got a purported scumbag, and it doesn't seem to be real hard for your client to call him a liar. It doesn't seem like the jury ought to assume that by being forced to call him a liar, your client's being pressured into anything. In the particulars of this case, I'm not sure I understand what the prejudice is. Well, I certainly understand your point, Your Honor, but it seems to me that it's the accumulation of prosecutorial misconduct, the facts not in evidence, calling the officer a liar by indirection, calling Mr. Esau a liar by engaging in this improper colloquy. The totality of those things in, I think the really crucial issue is that it was a very flimsy case. I don't think that that line of questioning in a case where there was, for example, eyewitness evidence, direct evidence, fingerprints, drug residue, something that you could pin on Mr. Lee, it might not have made a difference. But this is a very flimsy case. So everything that the prosecutor did to make their case better, when it was improper, it made a big difference. I'd like to reserve two minutes unless there are further questions. Okay. Thank you. Gave you a two-minute warning. Yes, I know. Without intending. Sorry about that. All right. We've been, if we could hold on for just a moment, we've been asked to wait for just a moment before the government argues to see if we can reset the timer and do away with this annoyance. Okay. I'm really pleased to court, Kyle French for the United States. Joining me at council table is United States Attorney for District of Alaska, Karen Loeffler. She joins me because this is an unusual case. The government concedes that it committed prosecutorial error during the course of this trial. And while no trial is completely error-free, we wish to communicate to this court that we take this matter very seriously and with a firm commitment to remedy and prevent these types of errors from occurring again in the future. But in this particular case, the errors that occurred did not cause Mr. Lee substantial prejudice. The court focused on determining which particular aspect of the errors in this case are really of greater consideration. We have two types of errors. Well, before you get to that, do we have some obligation in our supervisory powers to say that these kinds of, this kind of misconduct, which is, we appreciate, I'm speaking only for myself, but I think this judge very much appreciates the candor of the government in coming forward and conceding error, which is your obligation as a servant of the public and a representative of the United States. But what is, don't we have some obligation to say that this kind of conduct should not be condoned and that we will weigh it under a standard that keep the government to a little higher standard than we would with an ordinary situation of plain error? Well, I think that given the nature of the case, criminal conviction in the balance, that the government needs to be held to a high standard. That should be expected just from the nature of the case. And I think that the Supreme Court, the body of law under this circuit, has made it clear that there is already a high standard established. It is a standard that every attorney is expected to meet. And with regard to the particular conduct and whether the government should be held to a higher standard, I think that the standard itself reflects that when considering the conduct of the government, there are a number of factors for me to look at, such as the severity of the error. And in a situation where a prosecutor is presenting a case, the nature and severity of error can be very different than, say, in another case. So I think the inherent nature of the criminal proceeding and criminal prosecution is already being weighed in the balance of the standard that's been created. I understand that. But it always troubles me that when the government commits error in a case in which they have the burden and they engage in misconduct, which is clearly misconduct, and then they argue, well, it didn't make any difference, the question is always, well, then why did the government do it? Well, I think, and that is clearly a very important point in terms of evaluating the conduct in this particular case. Why did the government do it? When the prosecutor in closing argument mentioned a fact not in evidence, why did the prosecutor do that? And there is case law and case examples where prosecutors have done that intentionally. And you have cases where prosecutors have done that inadvertently. And in this case, the prosecutor, I believe, did it inadvertently. She said that the officer testified that there were activities in the car with people going in and out that were consistent with drug deals being made. That's not true. That was not in evidence. What was in evidence, though, was the fact that the officer's descriptions and other testimony in the case supported the inference that people going in and out of that car is activities that was consistent with drug activity going on. So I think that in terms of looking at the different factors, whether or not it was intentional would be a factor to take a look at. Well, let me ask this. Did the district court ever have a chance to consider this question? Was there a post-trial motion or anything like that? No, Your Honor. There was no post-trial motion in this case. This is kind of difficult for us to evaluate these kinds of issues on a cold record. I understand. Okay. One thing you can look at is with regard to the statement that was made in closing, what did the court do in response to that? Well, there was no objection. There was no subsequent motion evaluating the nature of the impact subsequent to the trial. But what we have is a court who gave a curative, a warning instruction to the jury that what the prosecutor says in closing argument is not in evidence. And in this particular case, the court did it three times. But that's always said. Correct. It wasn't. It is normally part of the jury instructions. But here, in a court opinion, it may be noteworthy that the court did it not just in the jury instructions, but also shortly after impaneling the jury, a second time immediately before the prosecutor starting a closing argument, and a third time in jury instructions. Of course, you're correct, Your Honor, that it's always present. But a curative effect is important in terms of the overall weight of what impact the particular argument during closing may have had with regard to the jury's decision in this case. With regard to the cross-examination, an important aspect of this case is that the clear strategy of defendant is to make this a case about credibility, to have the jury decide who was telling the truth, Lee or Esau. And with the nature of the cross-examination conduct by the prosecutor, and if you take a look at the nature of that, in light of the nature of the strategy, the questions asked that were improper were actually feeding the defendant's strategy. Because to the extent the jury focused more on who was telling the truth, the less the jury focused on the evidence in this case. And the government's position is that the evidence in this case is somewhat substantial. It is not overwhelming. But you have 19.5 grams of crack cocaine being found in the vicinity of the vehicle. You have a scale that Mr. Esau said that was used to weigh drugs located in the front of the vehicle. You have cell phones that were ringing post-arrest, indicative of communications being done in conjunction with the sale of drugs. You have $2,000, in excess of $2,000, found on Mr. Esau. You have officer observations over the course of 90 minutes where three people are entering and exiting the vehicle in rapid succession. You have all that evidence. And that is important, and, again, with regard to the cross-examination that was done here, because the impact it had was not substantially prejudicial in light of ---- But the prosecutor erred in saying that there was testimony that that kind of activity was related to drugs. I think the prosecutor ---- Getting in and out of the car. The prosecutor erred not in arguing the inference. The prosecutor erred in arguing the officer testified. Yes. Correct, Your Honor. The prosecutor, one thing to ---- He told them that this was ---- the police thought that this was ---- there was evidence that the police think this is related to drug activity. The jury wouldn't have known that otherwise, other than his stating that there was evidence to that effect, which there wasn't. In the paragraph immediately before that statement was made by the prosecutor, she did make the argument about the inference. She did identify that the officer had the observations over the course, in this case 90 minutes, to see the individuals coming in and out. The short period in which they had been in the vehicle. So she had argued an inference actually immediately before identifying the officer's ---- the misstatement about officer's testimony that he did not make. Are there any further questions? I guess, for me, looking at the question of whether it was prejudicial, what we've heard from the defense is that this was a case with a feather on both sides. You've indicated some of the evidence you think that might help corroborate Esau's story. And the real problem with the government's case is it hangs together based on Esau's story. And Esau is not somebody who would be identified by anybody as someone particularly trustworthy. So can you explain to me how that additional evidence you think provides sufficient corroboration that we shouldn't be concerned about the statements, for example, that Lee is required to call Esau a liar, which may be his theory, but does put more pressure on him to come up with affirmative proof than otherwise a defendant would be required to come up with? Your Honor, I think the court, justly rightly so, should be concerned about the activity here in terms of prosecutor's conduct. This is not a case in which I am arguing, or I believe on the brief, the statements being made or the positions being taken by the government that the evidence is overwhelming. There are many cases in the circuit in which we've had cross-examination activities such as occurred here in which the evidence is overwhelming. This is not the case. So it's clearly a situation. So what is there that gives us confidence that none of this made any difference, that the evidence isn't overwhelming here? What is there that should make us confident that the result wouldn't have been any different? Well, I think a big part of it is the nature of the defendant's strategy in putting squarely before the jury the credibility of Mr. Esau and Mr. Lee. That issue has already been put before the jury by a defendant, and that is part and parcel of their strategy. In terms of eliciting testimony which feeds into that strategy, which in this case I believe actually defocuses away from the other evidence, but it reduces the overall impact or severity of the error. It would have perhaps been different, say, if you had a case where an officer is being confronted or a defendant is being confronted about an officer's testimony and whether there was direct lying by the officer. And here we have the accuracy statement, which is a little bit different. But I think that overall it's heightening a credibility judgment that Lee was already asking the jury to make. The prosecutor didn't repeat the improper responses that were elicited during closing argument. Counsel, didn't Lee himself testify that people were getting in and out of his car to buy drugs? Yes. He identified that the third person's testimony. Yes, sir. Yes, Your Honor. But is that something we can take into account or not? Yes, because I think it goes to show that the inference that would be made by the jury clearly is proper and supported by the evidence. Okay. You have more than used your time if this is operating correctly now. Thank you. Thank you. At least we didn't beat back you. Yeah. Thank you. I'd like to first go back to Judge Clifton's questions about what was it about asking Lee to call Esau a liar. And I would refer the Court to page 19 of our opening brief. And the structure of those, of that questioning is part of what creates the problem in that the first two times the prosecutor asked those questions, it was about really irrelevant and immaterial topics. And led Lee into calling Esau a liar over whether they'd gone to elementary school together and how long Esau had been dealing drugs. So that when we got around to a relevant topic about the specific incriminating testimony of Esau, the prosecutor had set up this contest where it was whether or not Lee was calling Esau a liar and why Esau was a liar and why he thought he had a motivation to lie. Because the first two items, Esau really had no motivation to lie. And really Lee had no motivation to call him a liar, I think. So it was all completely irrelevant other than to create this contest about who's lying and who's not lying, which was. But the case was a contest. Well, it was. There's no way around the fact that this is a pure credibility dispute. It was, which is why the prosecutor is not allowed to put a thumb on the scale by doing that kind of improper questioning. I want to also respond to the question that you asked, Mr. French, about what is the evidence that incriminates him other than the testimony of Mr. Esau? How are those things connected to Mr. Lee? And I think the response is they're very flimsily connected. The scale, Mr. Esau never said that Lee saw the scale, knew the scale was there, or could see the scale. That was something the prosecutor said. Because Esau said it was either in a glove compartment or inside the armrest. It wasn't in either place, but that was his testimony. I mean, it wasn't in either place when they got around to searching the car. The cell phones, there was no direct testimony, as I said before, that anyone Esau, I did not say Lee, overheard me making a drug deal. The crack residue was clearly, everybody agrees, a result of Esau throwing it out the window at the time they were stopped. The $2,000 is no way connected to Mr. Lee because no one said he saw it, he saw him put it in the pocket, take it out of the pocket. And that's another thing actually about what happened in this case that I don't think amounts to misconduct, but it's the connection between the ineffective assistance and the evidence. There is nothing connecting the money on Mr. Lee to what he was charged with. Nothing. No one asked a police officer, so do you think that means he was dealing drugs? There is nothing except to create this aura that he's a bad guy who probably deals drugs because he has a bunch of money in his pocket. No connection. What's our standard of review at this point? Plain error because there was no objection? Correct. So it all boils down to the prejudice. You are in the red now. Okay. All right. We've tried to be even-handed. Yes, absolutely. Thank you. You didn't get beeped at this time. All right. The case just argued is submitted. We appreciate the arguments presented.
judges: Schroeder, O'scannlain, Clifton